IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANDRE W. WILLIAMS, SR., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-2944-L-BK |
| | § | |
| CITY OF RICHARDSON, et al., | § | |
|     Defendants. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to *Special Order 3* and 28 U.S.C. § 636(b)(1)(B)&(C), this case is now before the Court for the submission of findings of fact and a recommendation for the disposition of *Defendants' Motion to Dismiss*. Doc. 10. For the reasons detailed herein, Defendants' motion should be **GRANTED IN PART**.

### I. BACKGROUND

Plaintiff Andre W. Williams Sr. brings this employment discrimination case against his former employer, the City of Richardson ("the City"), and seven city employees: Daryl Fourte, Jose Moreno, Cheree Bontrager, Ryan Delzell, Travis Switzer, Hunter Stephens, and Randy Jones (collectively, "the Individual Defendants").

Plaintiff alleges that in December 2013, he began working for the City as a Solid Waste Residential Driver. Doc. 2 at 1. After being denied the position of Field Service Representative in the City's Water Department ("the Representative position") on June 25, 2014 and September 16, 2015, Plaintiff was promoted in November 2015 to Heavy Equipment Operator, and placed under Jones' supervision. Doc. 2 at 1-2.

Plaintiff's Complaint chronologically recounts events from September 2015 to June 2016, focusing primarily on his acrimonious relationship with Jones. For example, Plaintiff

alleges that Jones (1) would grow frustrated with Plaintiff's performance and speak to him in a "hostile manner," Doc. 2 at 4, 5, 7; (2) engaged in "unethical behavior," Doc. 2 at 2; (3) treated the longer-tenured drivers better than Plaintiff, Doc. 2 at 2; (4) told Plaintiff that "he didn't think [Plaintiff] was going to make it" and that Plaintiff was "too old," Doc. 2 at 3; and (5) punished Plaintiff by making him ride in the uncomfortable passenger seat of the front load vehicle, Doc. 2 at 6.

In February 2016, Plaintiff sustained a back injury while working. Doc. 2 at 6. At his doctor's request, Plaintiff missed two days of work and, upon his return, met with Defendants Fourte, Switzer, Delzell, Stephens, and Jones to complain about Jones' behavior. Doc. 2 at 7. Several days later, Plaintiff observed Jones violating city policy by riding in a city vehicle with a non-city employee. Doc. 2 at 8. Plaintiff alleges that as a result of his observation of Jones' violation of city policy and Plaintiff's earlier request for a meeting, Jones retaliated against him by attempting to give him a "low evaluation score of 74." Doc. 2 at 9; Doc. 11 at 24-26. Three days later, Plaintiff's doctor placed him on medical leave for four weeks. Doc. 2 at 9.

In April 2016, Plaintiff's doctor released him back to work "with attention to" the restrictions identified in the Physical Capabilities Form attached to Plaintiff's work release. Doc. 2 at 9; Doc. 11 at 27-28. Given his doctor's finding that extended sitting would "aggravate" his lower back, Plaintiff requested that he be provided "accommodations." Doc. 2 at 9-10. However, his request was denied, and Plaintiff was told he could not return to work until certain limitations were removed from his capabilities form. Doc. 2 at 10-13. During this time, Plaintiff was encouraged to apply for other internal positions and, in May 2016, he was interviewed for the Residential Waste Supervisor position ("the Supervisor position"). Doc. 2 at 12. However, ultimately another candidate was hired. Doc. 2 at 12.

2

In July 2016, Plaintiff was notified that, based on new information supplied by Plaintiff's doctor, he could return work. Doc. 2 at 13. However, Plaintiff "was not comfortable" with the way his medical information was shared with his employers, and refused to return to work. Doc. 2 at 14.

In July 2016, Plaintiff filed a charge of discrimination against the City with the Equal Employment Opportunity Commission ("EEOC").[1] Doc. 2 at 16; *see* Doc. 11 at 19-20. Plaintiff alleged retaliation and discrimination – based on his race, age, and disability – that occurred between September 16, 2015 and April 11, 2016. Doc. 11 at 19. Specifically, Plaintiff alleged three discrete discriminatory acts by Defendants: (1) denying Plaintiff the Representative position on September 16, 2015, (2) denying Plaintiff the Supervisor position, and (3) refusing to permit Plaintiff to return to work on two occasions. Doc. 11 at 19-20. Plaintiff further alleged that the last two adverse actions were in retaliation for Plaintiff's complaints about Jones "harassing [him] about [his] age" by "making comments like 'you are too old to remember' and 'you are not going to make it.'" Doc. 11 at 20.

In October 2016, Plaintiff filed the instant action. Doc. 2. Defendants now move to dismiss all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Doc. 10.

## II. LEGAL STANDARD

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, the court accepts "all well-

---

[1] The Court can consider Plaintiff's EEOC complaint in resolving the Rule 12(b)(6) motion, as it was attached to Defendants' motion, is referred to in Plaintiff's pleadings, and is central to Plaintiff's claims. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); Doc. 11 at 19-20.

3

pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). However, the court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins*, 224 F.3d at 498 (internal citation and quotation marks omitted). In sum, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

### III. ANALYSIS

In light of Plaintiff's *pro se* status, the Court liberally construes Plaintiff's complaint to assert claims of: (1) race discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981; (2) age discrimination under the Age Discrimination in Employment Act ("ADEA"); (3) disability discrimination under the Americans with Disabilities Act ("ADA"); (4) retaliation in violation of the ADEA; and (5) violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Doc. 2 at 1; *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (*pro se* pleadings are "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (citations omitted). While Plaintiff also states in his complaint that he is suing Defendants for "threat with use of local city law enforcement" and "constructive labor practices," he presents no feasible legal theory for either claim, and the Court can divine no cognizable federal claim from the underlying facts. *See Alfred v. Corr. Corp. of Am.*, 437 F. App'x 281, 284 (5th Cir. 2011) (per curiam) ("[A] claim lacks an arguable basis in law if it is grounded on an indisputably meritless theory or alleges a violation of a legal interest that clearly does not exist.") (citation omitted). Accordingly, those claims are not discussed further.

4

### A. Individual Liability

Defendants move to dismiss Plaintiff's discrimination and retaliation claims against the Individual Defendants in their individual capacities. Doc. 10 at 20-22. In response, Plaintiff insists that the Individual Defendants should be held liable as "accomplices to the Civil Rights violations." Doc. 12 at 27.[2] Based on the allegations in Plaintiff's complaint, it appears the Individual Defendants were/are supervisory employees. Neither Title VII, the ADA, nor the ADEA provides for individual liability for supervisory employees. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996) ("[T]he ADEA provides no basis for individual liability for supervisory employees."); *Williamson v. Am. Nat'l Ins. Co.*, 695 F. Supp. 2d 431, 440 n.7 (S.D. Tex. 2010) (listing cases holding that a supervisor or employee cannot be held liable in his individual capacity under Title VII and the ADA). Thus, Plaintiff's discrimination and ADEA retaliation claims against the Individual Defendants in their individual capacities for violations of those statutes should be dismissed.

As to section 1981, "[a]n employee who exercises control over the plaintiff with respect to an employment decision may be individually liable if the employee was 'essentially the same' as the employer in exercising this authority." *Miller v. Wachovia Bank, N.A.*, 541 F. Supp. 2d 858, 863 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 337-38 (5th Cir. 2003)). As discussed in greater detail below, the only employment decision Plaintiff even tangentially connects to his race (a requirement to state a section 1981 claim) is the failure to hire him for the Representative position. However, based on Plaintiff's allegations, the position was in the City's Water Department and he does not allege that any of the Individual

---

[2] Plaintiff filed his response twice. *See* Doc. 12 & Doc. 13.

5

Defendants played any role in the hiring decision for the Representative position, such that they could be considered "essentially the same as" the City. *Miller*, 541 F. Supp. 2d at 863. Accordingly, Plaintiff's section 1981 claim against the Individual Defendants in their individual capacities should also be dismissed.

### B. Statute of Limitations and Administrative Exhaustion

Defendants next argue that Plaintiff's Title VII, ADA, and ADEA claims are time-barred to the extent they arise from actions that occurred more than 300 days before Plaintiff filed his EEOC complaint. Doc. 10 at 24-25. Defendants further argue that Plaintiff's failure to allege a hostile-work-environment claim in the EEOC complaint prevents him from using the "continuing violation" doctrine to salvage these time-barred actions. Doc. 10 at 25. Plaintiff's response contains a section titled "Plaintiff's evidence of that all [sic] Administrative resources were exhausted," however, he fails to address the substance of Defendants' arguments on this issue. *See* Doc. 12 at 28-31.

To pursue Title VII, ADA, and ADEA claims in federal court, a plaintiff must first exhaust administrative remedies by timely filing a charge of discrimination with the EEOC and receiving a notice of a right to sue. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). Courts do not consider unexhausted claims, i.e., claims that were not charged before the EEOC, or those that do not fall within the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 472 (5th Cir. 2016) (per curiam) (citation omitted). Additionally, EEOC charges can only be based on activity that occurred within the preceding 300 days. *Heath v. Bd. of Supervisors for S. Univ. and Agric. and Mech. Coll.*, 850 F.3d 731, 741-42 (5th Cir. 2017). A plaintiff may sidestep this limitations bar via the "continuing violation" doctrine. *Skaggs v. Van*

6

*Alstyne Indep. Sch. Dist.*, No. 16-CV-0227-CAN, 2017 WL 77825, at *6 (E.D. Tex. Jan. 9, 2017). However, the continuing violation doctrine applies only to hostile work environment claims, and Plaintiff raised no such claim during the administrative proceedings or in his complaint. *Heath*, 850 F.3d at 737 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-17 (2002)).

Having filed the Charge on July 26, 2016, Plaintiff is limited to claims for discrimination that occurred on or after September 30, 2015. *Heath*, 850 F.3d at 741-42. Plaintiff was denied the Representative position on June 24, 2014 and again on September 16, 2015. Doc. 2 at 1. As these events occurred before September 30, 2015, they are barred by the statute of limitations and cannot support Plaintiff's Title VII, ADA, or ADEA claims. Thus, Plaintiff's Title VII, ADA, and ADEA claims arising from actions that occurred before September 30, 2015 should be dismissed.

While Title VII and section 1981 are analyzed under the same framework, section 1981 does not share Title VII's administrative exhaustion requirement or 300-day limitations period. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *see Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383-84 (2004) (noting a four-year statute of limitations for section 1981 claims). Thus, although Plaintiff's denials of the Representative position occurred more than 300 days before he filed the Charge, they occurred less than four years before Plaintiff filed the instant action and could potentially serve as an adverse employment action for his section 1981 claim. *Jones*, 541 U.S. at 383-84. However, as discussed *infra*, Plaintiff fails to allege facts that would permit the court to reasonably infer that the Representative position was anything other than a lateral transfer, and thus it cannot be considered an adverse employment action.

## C. Adverse Employment Action

Defendants next move to dismiss Plaintiff's Title VII, ADA, ADEA, and section 1981 discrimination claims, arguing that they fail to allege an adverse employment action. Doc. 10 at 28. In relevant part, Defendants argue that the City's refusal to allow Plaintiff to move to the Supervisor position, Plaintiff's disagreements with Jones, and the City's refusal to permit Plaintiff to return to work pending a full medical release from his doctor are not the type of "ultimate employment decision" required to state a discrimination claim. Doc. 10 at 28-29. Plaintiff does not address the substance of Defendants' argument. *See* Doc. 12 at 31-32.

To state a discrimination claim under Title VII, the ADA, the ADEA, or section 1981, a plaintiff must allege that he suffered some "adverse employment action."[3] Adverse employment actions include only ultimate employment decisions such as "hiring, granting leave, discharging, promoting, and compensating." *Hernandez v. Crawford Building Material Co.*, 321 F.3d 528, 531 (5th Cir. 2003) (per curiam) (quotation omitted). Thus, "[a]n employer's action does not rise to the level of an adverse employment action when it fails to have more than mere tangential effect on a possible future ultimate employment decision." *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001) (quotation omitted). Accordingly, denial of a "purely lateral transfer" is not an adverse employment action. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 614 (5th Cir. 2007) (emphasis in original).

Accepting Plaintiff's allegations as true, Defendants' denial of the Supervisor position is an adverse employment action. While Defendants contend that Plaintiff fails to allege that this position was anything other than a lateral transfer, the Court disagrees. Doc. 10 at 28. First,

---

[3] The elements of each are discussed *infra*.

immediately after detailing his denial of the Supervisor position, Plaintiff discusses the City's "promotion" policy, wherein he notes that virtually all supervisory positions are filled by "internal[ ] promot[ion]." Doc. 2 at 12. Viewing these allegations in the light most favorable to Plaintiff, the Court finds he has plausibly alleged that the Supervisor position is a promotion, and thus, denying Plaintiff the position constitutes an adverse employment action. *Hernandez*, 321 F.3d at 531.

However, the numerous contentious incidents between Plaintiff and Jones, including the verbal altercations and allegedly undeserved negative performance evaluation, are not adverse employment actions. *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (noting that the Fifth Circuit has held that mere criticism is not an adverse employment action); *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 855 (S.D. Tex. 2010) (holding that negative performance reviews, even if undeserved, do not qualify as adverse employment actions).

Likewise, the City's refusal to permit Plaintiff to return to work for approximately three months pending receipt of a full medical release is not an adverse employment action. As Plaintiff's complaint makes clear, he sustained an on-the-job injury requiring him to miss work for several weeks. Thereafter, Plaintiff was released to work, restricted by the limitations noted in the Physical Capability Form. Defendant Switzer then notified Plaintiff that the limitations would have to be removed, i.e., he would need a full medical release, before he could return to work. While Plaintiff disagreed with this assessment, he does not allege that he visited his doctor or made any effort to have these restrictions removed. In fact, despite being medically cleared on July 14, 2016, Plaintiff admits he refused to return to work. Under these facts, it was Plaintiff's own failure to obtain a full medical release that delayed his return to work, not any adverse action on the part of the City. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 09-CV-

9

41-D, 2010 WL 1779666, at *3 (N.D. Tex. Mar. 22, 2010) (Sanderson, J.), *adopted by* 2010 WL 1779664 (N.D. Tex. Apr. 29, 2010) (Fitzwater, C.J.) ("Where a plaintiff's own pleadings demonstrate that the only reason he was not allowed to return to work was due to his failure to obtain a medical release, he cannot make a plausible showing that he was a victim of an adverse employment action.") (internal footnote omitted); *see also Dixon v. Grande Commc'ns Networks L.L.C.*, No. MO-13-CV-085, 2015 WL 139070, at *6 (W.D. Tex. Jan. 8, 2015) (differentiating between a plaintiff "voluntarily . . . not return[ing] to work" and an employer "subjecting [a plaintiff] to an adverse employment action"). Accordingly, Plaintiff's Title VII, ADA, ADEA and section 1981 claims premised on his being denied the Supervisor position survive dismissal.

As mentioned *supra*, Plaintiff's assertion of the denial of the Representative position is untimely as to his Title VII, ADA, and ADEA claims. While Title VII and section 1981 are analyzed under the same framework, however, section 1981 does not share Title VII's administrative exhaustion requirement or 300-day limitations period. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *see Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383-84 (2004) (noting a four-year statute of limitations for section 1981 claims). Thus, although Plaintiff's denials of the Representative position occurred more than 300 days before he filed the Charge, they occurred less than four years before Plaintiff filed the instant action and potentially could serve as an adverse employment action for his section 1981 claim. *Jones*, 541 U.S. at 383-84. But Plaintiff fails to allege facts that would permit the court to reasonably infer that the Representative position was anything other than a lateral transfer, and thus it cannot be considered an adverse employment action even as to his section 1981 claim. *Alvarado*, 492 F.3d at 614.

10

D.   Race Discrimination

Defendants next move to dismiss Plaintiff's Title VII and section 1981 claims, arguing that they fail to allege non-conclusory facts that can support a claim of "improper racially-motivated behavior" by the City or the Individual Defendants, or to otherwise connect Plaintiff's race to any events described in the complaint (except for the time-barred Representative position in June 2014).[4]  Doc. 10 at 30.  Additionally, Defendants argue that Plaintiff's race discrimination claims are implausible because, *inter alia*, his supervisors are also African-American.  Doc. 10 at 30-31.  In response, Plaintiff claims that Fourte, who is also African-American, discriminates against other African-Americans to maintain his status.  Doc. 12 at 9-10, 32-33.

Title VII makes it unlawful to "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Additionally, section 1981 proscribes discrimination on the basis of race in making or enforcing a contract, including an employment contract.  42 U.S.C. § 1981, 1981(b); *Miller*, 541 F. Supp. 2d at 861.

The Supreme Court has made clear that a plaintiff need not plead a *prima facie* case of employment discrimination to survive a motion to dismiss under Rule 12(b)(6).  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002).  Instead, a plaintiff "need only allege enough facts to plausibly suggest that her employer discriminated against her due to her membership in a protected group."  *Carter v. Burlington N. Santa Fe L.L.C.*, No. 15-CV-366-O,

---

[4] Because Title VII and section 1981 claims are analyzed under the same framework, the Court addresses them concurrently.  *Jones*, 427 F.3d at 992.

2015 WL 11022766, at *4 (N.D. Tex. Oct. 9, 2015) (O'Connor, J.) (quoting *Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 804 (E.D. Tex. 2013)).

Plaintiff fails to plead facts that plausibly suggest he was discriminated against on the basis of his race in violation of Title VII or section 1981. Plaintiff only references race in his complaint when alleging that (1) a less-qualified Caucasian individual was hired for the Representative position in June 2014, and (2) the Water Department personnel "happen to be racist." Doc. 2 at 1. However, as discussed previously, Plaintiff fails to allege that the Representative position was anything other than a lateral transfer for him, and thus it cannot serve as the requisite adverse employment action for his Title VII or section 1981 claims. *Alvarado*, 492 F.3d at 614. Additionally, Plaintiff also fails to allege that he was denied the position *because of* his race. See *McGee v. Eshrick Props.*, No. 12-CV-4366-P, 2012 WL 6757868, at *1 n.1 (N.D. Tex. Nov. 21, 2012) (Stickney, J.) (plaintiff failed to state claim under section 1981 where, *inter alia*, he failed to allege that he was intentionally discriminated against because of his race), *adopted by* 2012 WL 6758085 (N.D. Tex. Dec. 30, 2012) (Solis, J.). Accordingly, Plaintiff's race discrimination claims under Title VII and section 1981 should be dismissed for failure to state a claim.

### E. Age Discrimination

Defendants move to dismiss Plaintiff's ADEA claim, arguing that he failed to allege in his complaint either an adverse employment action or that he was treated less favorably than similarly-situated individuals outside the protected group, i.e., individuals younger than 40 years old. Doc. 10 at 31.

Under the ADEA, an employer may not discriminate against a person because of his age. 29 U.S.C. § 623(a)(1). And while a plaintiff need not plead a *prima facie* age discrimination

12

claim at this stage, the allegations in his complaint must permit the court "to reasonably infer that the employer took the adverse employment action because of the plaintiff's age." *Woldetadik v. 7-Eleven, Inc.*, 881 F. Supp. 2d 738, 741 (N.D. Tex. 2012) (Lindsay, J.) (citing *Swierkiewicz*, 534 U.S. at 511-12). Plaintiff's claims fail in this regard.

The only adverse employment action that Plaintiff ostensibly ties to his age is the City's denial of the Representative position, which he alleges was given to a "younger" applicant. Doc. 2 at 1. However, as discussed previously, that adverse action is time-barred for the purposes of supporting his ADEA claim. *Heath*, 850 F.3d 731 at 741-42. Thus, because Plaintiff fails to allege facts that permit the reasonable inference that Defendants took an adverse employment action because of his age, his ADEA claim is subject to dismissal. *Woldetadik*, 881 F. Supp. 2d at 741.

### F. Disability Discrimination

Plaintiff alleges that after sustaining an on-the-job injury, Defendants refused to accommodate his impairment, presumably from the time he requested an accommodation on April 11, 2016, Doc. 2 at 9-10, until the time the City's human resource director advised him that he could return to work starting on July 15, 2016, Doc. 2 at 13. Defendants move to dismiss Plaintiff's ADA claim, arguing, *inter alia*, that he fails to allege a qualifying disability. Doc. 10 at 34-35. In his response, Plaintiff fails to address the substance of Defendants' arguments or discuss at all the substance of his ADA claim. *See* Doc. 12 at 37.

The ADA prohibits "discrimination against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Unlawful discrimination includes "not making reasonable

13

accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* at (b)(5)(A). For a failure-to-accommodate claim to withstand a Rule 12(b)(6) challenge, a plaintiff must allege facts that plausibly suggest: "(1) the employer is covered by the statute; (2) he is an individual with a disability [under the ADA]; (3) he can perform the essential functions of the job with or without reasonable accommodation; and (4) the employer had notice of the disability and failed to provide accommodation." *Fierro v. Knight Transp.*, No. EP-12-CV-00218-DCG, 2012 WL 4321304, at *2 (W.D. Tex. Sept. 18, 2012) (citing *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1515 (5th Cir. 1995)).

An individual with a disability is defined under the ADA as a person who (1) has a physical or mental impairment which substantially limits one or more of his major life activities;[5] or (2) has a record of such an impairment. 42 U.S.C. § 12102. In 2008, the enactment of the Americans with Disabilities Act Amendment Act ("ADAAA") broadened the ADA's definition of "disability." 42 U.S.C. § 12102(4)(A). Under the ADAAA's implementing regulations, an impairment is a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2 (j)(1)(ii). Additionally, an impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* Moreover, the substantially limiting effect of an impairment is not strictly tied to the impairment's duration and/or permanence. *Id.* at (j)(1)(ix) ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting[.]"). Still, "not every

---

[5] "Major life activities" include, but are not limited to, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, and sitting. 42 U.S.C. § 12102; 29 C.F.R. 1630.2(i)(1)(i).

impairment will constitute a disability within the meaning of [the ADA]." *Id.* at § 1630.2(j)(1)(ii).

Even under this broadened definition, Plaintiff fails to adequately allege in his complaint that he has a disability. Plaintiff never refers to himself as "disabled" or to his back injury as a "disability." *See* Doc. 2; *Bracken v. G6 Hosp. L.L.C.*, No. 14-CV-644-ALM-CAN, 2016 WL 3946791, at *6 (E.D. Tex. June 3, 2016) (dismissing plaintiff's ADA claim and noting, *inter alia*, that plaintiff never alleged "that he is (or has been) disabled"), *adopted by* 2016 WL 3917701 (E.D. Tex. July 20, 2016). While Plaintiff appears to identify "sitting" as the major life activity affected by his back injury, he does not allege that his ability to sit is "substantially limited." Instead, Plaintiff states only that his doctor "determined that extended long-term sitting would aggravate [his] low back." Doc. 2 at 9. *See Fierro*, 2012 WL 4321304, at *3 (finding plaintiff failed to plead he was actually disabled under the ADA where he alleged that he had cancer, but did not plead facts giving rise to the inference that his cancer substantially limited a major life activity). Additionally, Plaintiff has not alleged in his complaint that he has a record of a disability that substantially limits a major life activity. 42 U.S.C. § 12102(1)(B). Thus, Plaintiff's failure-to-accommodate claim should be dismissed.

### G. Retaliation

Defendants move to dismiss Plaintiff's retaliation claim for failure to allege that he engaged in any protected activity that causally links to an adverse employment action. Doc. 10 at 32-33. In response, Plaintiff lists various acts by the Individual Defendants that he claims were done in retaliation.[6] *See* Doc. 12 at 34-37. To make out a claim for retaliation under Title

---

[6] While Plaintiff's response lists these alleged acts of retaliation, he does not clarify what acts prompted the alleged retaliatory conduct. *See* Doc. 12 at 34-37.

VII, the ADA, the ADEA, and section 1981, a plaintiff must establish: (1) that he engaged in activities protected by the particular statute; (2) an adverse employment action occurred; and (3) a causal link connects the protected activity to the adverse employment action. *Reilly v. Capgemini Am., Inc.*, No. 05-CV-1162-K, 2007 WL 945685, at *4 (N.D. Tex. Mar. 28, 2007) (Kinkeade, J.) (collecting cases).

"An employee engages in a protected activity where she opposes an activity she reasonably believes constitutes unlawful discrimination." *Skaggs*, 2017 WL 77825, at *16 (citing *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam)). An informal complaint may constitute protected activity for purposes of retaliation claims. *Holland v. Shinseki*, No. 10-CV-0908-B, 2012 WL 162333, at *18 (N.D. Tex. Jan. 18, 2012) (Boyle, J.) (citing *Amanduron v. Am. Airlines*, 416 F. App'x 421, 424 (5th Cir. 2011) (per curiam)). While the complaint need not contain "[m]agic words," it "must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown*, 406 F. App'x at 840 (citations omitted).

While difficult to ascertain the protected activity that Plaintiff identifies, his complaint specifically notes two events that he claims prompted retaliatory action: (1) he witnessed Jones violating city policy by giving a ride to a non-city employee in a city vehicle; and (2) he requested a meeting with Jones' superiors and "inform[ed] them of [Jones'] stealing, performing service to questionable places . . . , unethical behavior and safety concerns and his unsafe acts." Doc. 2 at 9.

However, merely observing Jones cannot be considered protected activity, as it involves no opposition to unlawful discrimination. *Skaggs*, 2017 WL 77825, at *16. Additionally, Plaintiff has not alleged in his Complaint that he complained of or reported any discrimination in

his meeting with Jones' superiors. Plaintiff only alleges that he requested the meeting to discuss "the issues he was having" with Jones as well as Jones's "unethical behavior." Doc. 2 at 6. These vague allegations do not suggest that Plaintiff was opposing an activity he reasonably believed constituted unlawful discrimination. *Brown*, 406 F. App'x at 840; *see. e.g., Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (finding that a plaintiff's complaint at a meeting with his supervisor of a "hostile work environment" was not protected activity under Title VII, as it "lacked a racial or gender basis"); *Simmons v. Navy Fed. Credit Union*, No. C-10-14, 2011 WL 2078528, at *5 (S.D. Tex. May 26, 2011) (finding plaintiff's complaint about her supervisor's "unethical standards of conduct" was not protected activity under ADEA). Accordingly, Plaintiff's Title VII, ADA, ADEA, and section 1981 retaliation claims should be dismissed.

## H. HIPAA

Plaintiff charges Defendants with a "HIPPA [sic] Violation," Doc. 2 at 1. However, as Defendants correctly argue, no private cause of action exists under HIPAA. *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (per curiam). Accordingly, Plaintiff's HIPAA claim should be dismissed for lack of subject matter jurisdiction. *Id.* at 572.

## IV. LEAVE TO AMEND

Ordinarily, a plaintiff should be granted leave to amend his complaint prior to dismissal. *See Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam). However, leave need not be granted when doing so would be futile and cause needless delay. *See McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561-62 (5th Cir. 1998) (per curiam) (noting that dismissal with prejudice is appropriate if it appears that no relief can be granted under any set of facts that could be proven consistent with the plaintiff's allegations).

Plaintiff is proceeding without the assistance of counsel and has not previously been granted leave to amend his complaint. Thus, if this recommendation is accepted, Plaintiff should be given the opportunity to amend his complaint to re-plead only his Title VII, ADA and ADEA claims against the City, and his section 1981 claims against all Defendants.

## V. CONCLUSION

For the reasons stated above, *Defendants' Motion to Dismiss*, Doc. 10, should be **GRANTED IN PART**. Plaintiff's Title VII, ADA and ADEA claims against the Individual Defendants in their individual capacities should be **DISMISSED WITH PREJUDICE**; Plaintiff's Title VII, ADA, and ADEA claims premised on adverse actions that occurred before September 30, 2015 should be **DISMISSED WITH PREJUDICE**; Plaintiff's "Threat with use of Local Law Enforcement" and "Constructive Labor Practices" claims should be **DISMISSED WITH PREJUDICE**; and Plaintiff's HIPAA claim should be **DISMISSED WIHTOUT PREJUDICE** for lack of jurisdiction.

Plaintiff's Title VII, ADA and ADEA claims against the City, and section 1981 claims against all Defendants should be **DISMISSED WITHOUT PREJUDICE** to their being amended to state (if possible) a viable claim. If, however, within 14 days of the District Judge's Order accepting this recommendation, Plaintiff fails to amend his complaint to cure the deficiencies noted herein, at Defendants' timely re-urging, the claims initially dismissed without prejudice should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED**, September 8, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. §636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE