IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANDRE W. WILLIAMS, SR. | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-2944-L-BK |
| | § | |
| CITY OF RICHARDSON, et al., | § | |
|     Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3* and 28 U.S.C. § 636(b), this case has been referred to the undersigned for pretrial management. The Court now considers Defendants' *Motion to Dismiss*, Doc. 18. For the reasons stated here, Defendants' motion should be **GRANTED**.

## I.  BACKGROUND

Plaintiff Andre W. Williams Sr. brings this employment discrimination case against his former employer, the City of Richardson ("the City"), and seven city employees: Daryl Fourte, Jose Moreno, Cheree Bontrager, Ryan Delzell, Travis Switzer, Hunter Stephens, and Randy Jones (collectively, the "Individual Defendants").

Williams alleges that in December 2013, he began working for the City as a Solid Waste Residential Driver. Doc. 17 at 5. After being denied "a promotion position" in the City's Water Department in June 2014 (the "June 2014 Non-Promotion") and September 2015, Williams was promoted to Heavy Equipment Operator in November 2015 and placed under Jones' supervision. Doc. 17 at 6. Williams' Complaint chronologically recounts his experiences working for the City from February 2016 to July 2016, focusing primarily on his acrimonious relationship with Jones. For example, Williams alleges that Jones (1) racially discriminated against Williams for not accepting Jones' "unethical behavior," Doc. 17 at 7; (2) "retaliated against" Williams by

demanding that he ride in a front load vehicle, which "caus[ed] irritable pain and discomfort" to Williams' lower back, Doc. 17 at 7; (3) "harassed" Williams by "forcibly tossing a map book" into his chest, Doc. 17 at 7; and (4) "harassed and retaliated" against Williams by refusing to acknowledge his on-the-job injury and giving him an unfair performance evaluation, Doc. 17 at 7-8.

In March 2016, Williams attended a meeting with Fourte, Switzer, Delzell, Stephens, and Jones, "a group of individuals representing [the City]," where Williams alleges they "supported and encouraged the hostile treatment of Fourte towards [Williams]" and "supported" Jones' retaliatory performance evaluations. Doc. 17 at 8. Williams further alleges that in April 2016, he was discriminated against when Moreno hung up in the middle of a telephone conversation with Williams. Doc. 17 at 8. Williams then alleges that, after suffering an on-the-job injury, each of the Individual Defendants discriminated against him by preventing him from returning to work. Doc. 17 at 8-9.

Williams alleges that in May 2016, he was denied the position of Residential Solid Waste Supervisor (the "Supervisor Position") due to his race and "through reasons of retaliation by" Fourte and Switzer. Doc. 17 at 9. According to Williams, in July 2016, Moreno discriminated against him by contacting Williams' doctor and thereby invading his privacy. Doc. 17 at 9. Williams further alleges that later that month, he was discriminated against when Jones confronted him in a parking lot, after which Fourte called the police and "provided false statements to obtain a report against [Williams]." Doc. 17 at 10.

Williams subsequently filed a charge of discrimination against the City with the Equal Employment Opportunity Commission ("EEOC") (the "Charge").[1] Doc. 17 at 22-23. Williams alleged retaliation and discrimination – based on race, age, and disability – that occurred between

2

September 16, 2015 and April 11, 2016. Doc. 17 at 22. Specifically, Williams alleged three discrete discriminatory acts by Defendants: (1) denying Williams the promotion position in September 2015, (2) denying Williams the Supervisor Position in May 2016, and (3) refusing to permit Williams to return to work on two occasions. Doc. 17 at 22-23. Williams further alleged in the Charge that the last two adverse actions were committed in retaliation for Williams' complaints about Jones "harassing [him] about [his] age" by "making comments like 'you are too old to remember' and 'you are not going to make it.'" Doc. 17 at 23.

On October 20, 2016, Williams filed his Original Complaint in this case, asserting various causes of action for discrimination.[1] Doc. 2. In January 2017, Defendants moved to dismiss all of Williams' claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 10. The Court dismissed all of Williams' claims, but granted him leave to replead his (1) Title VII, ADA, and ADEA claims against the City, and (2) section 1981 claims against all Defendants. *See Williams v. City of Richardson*, No. 3:16-CV-2944-L-BK, 2017 WL 4404461 (N.D. Tex. Sept. 8, 2017) (Toliver, J.), *adopted by* 2017 WL 4351535 (N.D. Tex. Sept. 30, 2017) (Lindsay, J.). Thereafter, Williams filed his First Amended Complaint asserting claims against Defendants for violations of section 1981 (asserted through section 1983), Title VII, the ADA, and the ADEA. Doc. 17.

By the instant motion, Defendants move for partial dismissal of Williams' First Amended Complaint, specifically his (1) section 1981 claims (brought through section 1983) against the City and the Individual Defendants in their individual capacities, (2) section 1981 claims (brought through section 1983) based on the June 2014 Non-Promotion against all Defendants,

---

[1] After filing his Original Complaint, Williams was fired by Fourte on October 31, 2016. Doc. 17 at 10.

and (3) hostile work environment claim, if any.  Doc. 18 at 2-12.  A response and reply were filed.[2]  Doc. 20; Doc. 22.

## II. LEGAL STANDARD

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In making this determination, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted).  However, the court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins*, 224 F.3d at 498 (internal citation and quotation marks omitted).  In sum, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).  A statute of limitations defense may be asserted by a Rule 12(b)(6) motion when that defense appears on the face of the complaint. *See Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 776 n.3 (5th Cir. 1997).

## III. ANALYSIS

**A.     Section 1983 Claim Against the City**

Defendants argue that Williams' section 1983 claim against the City, which is based on alleged violations of section 1981, should be dismissed because he fails to identify any City policy or custom that was the moving force behind any alleged constitutional violation.  Doc. 18

---

[2] Williams also filed a "response" to Williams' reply brief, *see* Doc. 23.  However a sur-reply may not be filed unless the Court has granted leave to do so.  *See* N.D. TEX. LOCAL CIV. R. 56.7.  Because Williams did not seek or obtain leave to file his sur-reply, the Court will not consider it.

at 3-4. In response, Williams references portions of the City's Discrimination/Harassment policy and Administrative Inquiry policy and argues "there was a blatant disregard for any official municipal policy or standard of procedures." Doc. 20 at 3-4.

Section 1981 proscribes racial discrimination in making or enforcing a contract, including an employment contract. *See* 42 U.S.C. § 1981. Section 1983 provides the sole remedy for discrimination by persons acting under the color of state law, i.e., for violations of section 1981. *Oden v. Oktibbeha Cty.*, 246 F.3d 458, 463 (5th Cir. 2001). Stated differently, a plaintiff "must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981." *Id.* (citation omitted). However, a city does not automatically incur section 1983 liability for injuries caused solely by its employees, and it cannot be held liable under section 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Johnson v. Deep E. Tex. Reg'l Narcotics*, 379 F.3d 293, 308 (5th Cir. 2004). Rather, to establish municipal liability under section 1983, a plaintiff must identify (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights which "moving force" is the policy or custom. *Monell*, 436 U.S. at 694. To show that a municipal policy or custom was the moving force behind a constitutional violation, a plaintiff must allege facts tending to show a direct causal link between the policy or custom and the alleged constitutional violations. *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001).

In his First Amended Complaint, Williams fails to identify any policymaker or City policy or custom that was the moving force behind an alleged constitutional violation. *Monell*, 436 U.S. at 694. In fact, Williams' first reference to a specific policy is in response to the motion to dismiss. Even if Williams' allegation of a City policy in his response could be properly considered for purposes of a Rule 12(b)(6) inquiry, it actually negates municipal

liability. Rather than alleging that <u>compliance with</u> an official policy or custom was the moving force behind any alleged constitutional violations, Williams alleges that the constitutional violations were the result of <u>deviation from</u> an official policy. *See* Doc. 20 at 4 ("there was a blatant disregard for any **official municipal policy** or standard of procedures") (emphasis in original); Doc. 20 at 8 ("[Defendants Moreno and Bontrager] could have and should have applied **'official municipal policy'** to the matters or informed the other defendants of the infractions they were causing") (emphasis in original). Accordingly, Williams' section 1983 claim against the City should be dismissed. *See Gaynier v. Hudson*, No. 3:16-CV-2314-D-BK, 2017 WL 6626347, at *2-3 (N.D. Tex. Nov. 16, 2017) (Toliver, J.) (dismissing section 1983 claims against municipality where plaintiff alleged that constitutional violations were caused by defendant's deviation from, and not compliance with, an official policy or custom), *adopted by* 2017 WL 6621541 (N.D. Tex. Dec. 28, 2017) (Fitzwater, J.).

**B.    Individual Capacity Claims Against the Non-Supervisory Individual Defendants**

Defendants argue that because Williams states he is suing the Individual Defendants only in their official capacities, any claims against them in their individual capacities should be dismissed. Doc. 18 at 5. Alternatively, to the extent Williams is asserting claims against the Individual Defendants in their individual capacities, Defendants argue that they should be dismissed as to Jones, Delzell, Stephens, Bontrager, and Moreno – the "Non-Supervisory Individual Defendants, because Williams has failed to allege a viable section 1981 claim against them."[3] Doc. 18 at 5-10. By his response, Williams appears to misunderstand Defendants' argument, as well as the distinction between claims brought against a person in his official and/or

---

[3] Defendants concede that Williams has properly alleged a section 1981 claim against Fourte and Switzer in their individual capacities. *See* Doc. 18 at 5 n.2.

individual capacities, and simply retorts that he was "subjected to intentional discrimination from every individual defendant." Doc. 20 at 4-5.

The Court disagrees with Defendants' characterization of the First Amended Complaint explicitly limiting claims against the Individual Defendants to those in their official capacities. Although Williams alleges that his "claims are against Administrative Personnel, Fourte, Switzer, Delzell, Moreno, Bontrager, Stephens, and Jones, in their official capacity based on 42 U.S.C. § 1981 through 42 U.S. C, [sic] § 1983," Doc. 17 at 2, he only complains of actions taken by these Defendants in their individual capacities. *See, e.g.*, Doc. 17 at 8-9 (numerous references to Defendants acting in the their "individual capacity'). Given this ambiguity, the Court liberally construes Williams' First Amended Complaint as asserting section 1981 claims through section 1983 against the Individual Defendants in their individual capacities. *See Goins v. City of Sansom Park*, No. 4:14-CV-365-O, 2015 WL 3953795, at *7 n.10 (N.D. Tex. May 29, 2015) (Cureton, J.) (addressing *pro se* plaintiff's claims against the individual defendants in their individual capacities, despite the fact that it was unclear whether he brought such claims), *adopted by* 2015 WL 3960895 (N.D. Tex. June 29, 2015) (O'Connor, J.), *aff'd* 637 F. App'x 838 (5th Cir. 2016) (per curiam).

Nevertheless, as previously stated, a plaintiff must assert a cause of action against state actors under section 1983 to remedy violations of civil rights under section 1981. *Oden*, 246 F.3d at 463. To establish discrimination under section 1981, a plaintiff must prove that he was subjected to an adverse employment action because of race. *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). Although a complaint need not make out a *prima facie* case of employment discrimination to survive a motion to dismiss, the plaintiff must allege facts to suggest that he suffered an adverse employment action because of his race. *See Raj v. La. State*

*Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Adverse employment actions include only ultimate employment decisions such as "hiring, granting leave, discharging, promoting, and compensating." *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 (5th Cir. 2003) (per curiam). Liability under section 1981 "will lie against an individual defendant if that individual is 'essentially the same' as the State for the purposes of the complained-of conduct." *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 337 (5th Cir. 2003) (citation and internal quotation marks omitted). A supervisor or coworker is "essentially the same" as an employer if he or she exercises control or "managerial authority" over the plaintiff. *Miller v. Wachovia Bank, N.A.*, 541 F. Supp. 2d 858, 863 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *Foley*, 355 F.3d at 337-38).

Williams fails to properly allege a section 1981 claim against the Non-Supervisory Individual Defendants in their individual capacities. Specifically, Williams fails to allege that they were involved in any racially-motivated adverse employment action such that they could be considered "essentially the same" as the City. The closest Williams comes to doing so is his allegation that he was denied the "promotion position" in June 2014 and September 2015 because of his race. *See* Doc. 17 at 6. While Williams states that he discussed this denial with Bontrager, he fails to allege that she – or, for that matter, any Individual Defendant – played any role in his denial of the position such that she could be considered "essentially the same" as the City. *Foley*, 355 F.3d at 337. The other incidents in Williams' First Amended Complaint that involved the Non-Supervisory Individual Defendants concern allegations that he was subjected to rude behavior, given undeserved negative performance evaluations, and prevented from returning to work for a period after suffering an on-the-job injury. However, as explained in the Court's previous Findings, Conclusions and Recommendation, such actions are not "adverse

employment actions." See *Williams*, 2017 WL 4404461, at *5 (collecting cases). Williams offers no authority supporting a contrary conclusion, nor does he explain how in taking such actions, the non-supervisory Defendants were "essentially the same" as the City. *Hernandez*, 321 F.3d at 531; *Foley*, 355 F.3d at 337. Accordingly, Williams' section 1981 claims asserted through section 1983 against Jones, Delzell, Stephens, Bontrager, and Moreno in their individual capacities should be **DISMISSED**.[4]

## C. Hostile Work Environment Claim

In the portion of his First Amended Complaint detailing his Title VII, ADA, and ADEA claims, Williams alleges that he was subjected to a hostile work environment.[5] To the extent Williams intends to assert a hostile work environment claim, Defendants argue that it should be dismissed because he failed to present such a claim to the EEOC, and thus failed to exhaust administrative remedies. Doc. 18 at 11-12. In response, Williams argues that his use of the word "harassing" in the Charge is the equivalent of charging a hostile work environment claim. Doc. 20 at 8. Upon review, Defendants' argument is well-taken.[6]

To pursue Title VII, ADA, and ADEA claims in federal court, a plaintiff must first exhaust administrative remedies by timely filing a charge of discrimination with the EEOC and receiving a notice of a right to sue. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th

---

[4] Based on this finding, the Court does not reach Defendants' argument that Williams' claim of section 1981 violations arising from the June 2014 Non-Promotion is barred by the applicable two-year statute of limitations, Doc. 18 at 4.

[5] *See, e.g.*, Doc. 17 at 14 ("Williams encountered a hostile work environment."), 18 ("This even supports the fact that the plaintiff was working in a hostile environment.").

[6] In the Court's previous Findings, Conclusion and Recommendation, it noted that Williams had not raised a hostile work environment claim in his Original Complaint. *See Williams*, 2017 WL 4404461, at *3. Williams was granted leave, not to add a claim, but to clarify certain claims he was already asserting. However, in an abundance of caution, the Court addresses Williams' hostile work environment claim (to the extent one is asserted).

Cir. 2002). Courts do not consider unexhausted claims, i.e., claims that were not charged before the EEOC, or those that do not fall within the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 472 (5th Cir. 2016) (per curiam) (citation omitted).

Here, Williams failed to administratively exhaust his hostile work environment claim. *Taylor*, 296 F.3d at 378-79. First, the Charge does not mention a hostile work environment and identifies only discrete discriminatory acts between September 2015 and April 2016, rather than a continuous pattern. *See* Doc. 17 at 22-23; *Chhim*, 836 F.3d at 472. This Court, as well as the Court of Appeals for the Fifth Circuit, has found similar allegations insufficient for the purposes of exhausting a hostile work environment claim.[7] Second, Williams specifically avers in his First Amended Complaint that he filed an EEOC complaint alleging "race discrimination, age discrimination, disability discrimination and retaliation claims," and makes no mention of also asserting a hostile work environment claim before the EEOC. Doc. 17 at 4.

Moreover, Williams' mere use the word "harassing" in the EEOC Charge does not mean that he presented a hostile work environment claim to the EEOC. In context, Williams claimed that he was retaliated against for complaining to human resources and management that Jones

---

[7] *See Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, No. 15-CV-1413-B, 2015 WL 9269416, at *5 (N.D. Tex. Dec. 21, 2015) (Boyle, J.) (finding plaintiff failed to exhaust his hostile work environment claim where nothing in his EEOC charge indicated he was enduring a hostile work environment, and where the discrimination charged was not continuous and "consisted solely of discrete discriminatory acts"); *Wesley v. Yellow Transp. Co.*¸ No. 05-CV-2266-D, 2008 WL 294526, at *6 (N.D. Tex. Feb. 4, 2008) (Fitzwater, C.J.) (holding that plaintiff's charge for racial discrimination and retaliation did not exhaust a hostile work environment claim, where the charge failed to mention that plaintiff was subjected to a hostile work environment); *Gates v. Lyondell Petrochem. Co.*, 227 F. App'x 409 (5th Cir. 2007) (per curiam) (finding plaintiff's hostile work environment claim could not grow out of her EEOC charge where "she charged only her employer's discrete acts [of discrimination] . . . and made no mention of a hostile work environment").

was "harassing" him about his age.  Doc. 17 at 23.  And even if there was an indication that this alleged harassment created a hostile work environment, claiming that one was retaliated against for <u>complaining about</u> a hostile work environment is not the same as claiming that one was <u>subjected to</u> a hostile work environment.  Consequently, Williams' charge that Jones harassed him about his age was insufficient to exhaust a hostile work environment claim.  *See Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-CV-4997-D, 2016 WL 1161784, at *7 (N.D. Tex. Mar. 22, 2016) (Fitzwater, J.) (plaintiff's charge that she was retaliated against for complaining about a hostile work environment was a "materially different sort of complaint" and insufficient for the purposes of exhausting a hostile work environment claim).

Accordingly, Williams' hostile work environment claim should be dismissed for failure to exhaust administrative remedies.  *Taylor*, 296 F.3d at 378-79.

### IV. LEAVE TO AMEND

While a pro se plaintiff should ordinarily be granted leave to amend his complaint prior to dismissal, leave is not required when he has already pleaded his "best case."  *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam); *see also Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (leave need not be granted if the defect in the plaintiff's complaint is "simply incurable" or if "the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so") (citation omitted).  Here, Williams has already been granted leave to amend his complaint; however, his section 1981 claims (asserted through section 1983) against the City and Jones, Delzell, Stephens, Bontrager, and Moreno in their individual capacities are still infirm.  Additionally, for the reasons discussed herein, Williams' hostile work environment claim fails as a matter of law and, thus, is incurable.  *Hart*, 199 F.3d at

248 n.6. Accordingly, the Court concludes that, as to these claims, Williams has already pleaded his best case and they should be **DISMISSED WITH PREJUDICE**.

## V. CONCLUSION

For these reasons, Defendants' *Motion to Dismiss*, Doc. 18, should be **GRANTED** as to Williams' hostile work environment claim and section 1981 claims (asserted through section 1983) against the City and Jones, Delzell, Stephens, Bontrager, and Moreno in their individual capacities, and those claims should be **DISMISSED WITH PREJUDICE**.[8]

**SO RECOMMENDED** on August 15, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[8] Assuming acceptance of these Findings, Conclusions and Recommendation, Williams' following claims will remain pending: (1) section 1981 claims (asserted through section 1983) against Fourte and Switzer in their individual capacities, and (2) Title VII, ADA, and ADEA claims against the City.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE